BALONICK LAW OFFICE, INC.

Barney Balonick (SBN#277776)
429 Santa Monica Blvd #220
Santa Monica, CA 90401
310.310.8149
bhb@balonicklaw.com

DENNIS BERKSON & ASSOC., LTD

Dennis Berkson (ARDC#186368)
203 N. LaSalle St. #2100
Chicago, IL 60601
312.726.7402
dberkson@hotmail.com

Attorneys for Plaintiff
KENT SALVESON

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA -SOUTHERN DIVISION

| | |
|---|---|
| KENT SALVESON, an individual,<br><br>  Plaintiff,<br><br>vs.<br><br>HAL ROSS KESSLER, ESQ., an individual;<br><br>  Defendant. | CASE NO.: 8:22-CV-00310-ODW-ADS<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANT SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING COURT ORDERS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF BARNEY BALONICK, ESQ.; DENNIS BERKSON, ESQ.**<br><br>**[Proposed] Order** |

DATE: JULY 30, 2025
TIME: 10:00 A.M.
COURTROOM 6B

Complaint filed: February 26, 2022
Discovery cut-off: 7/7/2025
Expert cut-off: 7/28/2025
Motion cut-off: 8/25/2025
Trial Date: 11/18/2025
Time: 8:30 a.m.

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on July 30, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard before United States Magistrate Autumn Spaeth in the United States District Court for the Central District of California, Ronald Reagan Federal Building and United States Courthouse, 411 W. Fourth St., Santa Ana, CA 92701, Courtroom 6B, Plaintiff Kent Salveson ("Plaintiff/Salveson") will and hereby does moves this Court for an Order requiring Defendant Hal Ross Kessler ("Defendant") to show cause:

1. Why this Court should not adjudge Defendant in contempt of Judge Carney's Order for failing to pay sanctions to Salveson in an amount of no less than $76,089.34; and

2.  Why this Court should not Order the Defendant to pay a $100.00 per diem fine to this Court for each day Defendant Hal Ross Kessler remains in contempt of Judge Carney's October 25, 2023, Order; and

3.  Why this Court should not order Defendant to pay Mr. Salveson his reasonable attorneys' fees no less than **$9.100.00** incurred in preparing this Motion, and if necessary, the reasonable attorneys' fees incurred for any additional briefing and court appearance.

This Motion is pursuant to 18 U.S.C. § 401 and this Court's inherent authority. This Motion is based on this Notice of Motion and Motion, the Memorandum of points and authorities, the Declarations of Barney Balonick, Esq., and Dennis Berkson, Esq., documents attached thereto as well as documents previously filed with this Court, the complete record in the action as of the date of the hearing, and on such other and further matters as may be presented to the Court at the time of the hearing on this matter. [1]

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 29, 2025 (See Balonick and Berkson Declarations).

Dated: June 18, 2025          BALONICK LAW OFFICE, INC.
                                          By: /s/ Barney Balonick, Esq.

---

[1] Plaintiff submits only parts of the Defendant's deposition testimony. Defendant, pursuant to a protective order, marked his entire deposition as 'confidential' and rather than file the deposition under seal, Plaintiff merely submits the testimony that bears no relationship to the Defendant's allegations of cognitive impairment. Plaintiff will lodge the Defendant's entire 2-day testimony upon this Court's request.

DENNIS BERKSON & ASSOC., LTD.
By: /s/ Dennis Berkson, Esq.

Attorneys for Plaintiff
Kent Salveson

# __TABLE OF AUTHORITIES__

*Shillitani v. United States*, 384 U.S. 364, 370 (1966).

*Chambers v. NASCO, Inc.*, 510 U.S. 32, 43 (1991)

*United States v. Powers*, 629 F.2d 619

*In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361

*Shuffler v. Heritage Bank*, 720 F.2d 1141

*Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695

*NLRB v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612

*Donovan v. Mazzola*, 716 F.2d 1226

*Perry v. O'Donnell*, 759 F.2d 702

*Taggart v. Lorenzen*, 139 S. Ct. 1795

*United States v. Ayres*, 166 F.3d 991

*FTC v. Affordable Media, LLC*, 179 F.3d

*Trans Ocean Export Packing, Inc.*, 473F.2d at 616

*United States v. Rylander*, 656 F.2d 1313

*Stone v. City of San Francisco*, 968 F.2d 850

*Peterson v. Highland Music, Inc.*, 140 F.3d 1313

*AECOM Energy & Constr., Inc. v. Ripley*, 2018 U.S. Dist. LEXIS 79412

1   *Global Ampersand, LLC v.*

2
3   *Crown Eng'g & Constr.*, 261 F.R.D. 495

4   *Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045*

5
6   *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973

7   *Ketchum v. Moses,* 24 Cal.4th 1122

# **TABLE OF CONTENTS**

I.    **INTRODUCTION**

II.    **FACTUAL BACKGROUND**

A.  This Court's October 25, 2023, Sanctions Order [Dkt. #25]

B.  Mr. Salveson's Efforts To Determine Defendant's Veracity

C.  Pre-Filing Meet and Confer Efforts

III.    **ARGUMENT**

  **Civil Contempt**

  **Defendant Should Be Adjudicated In Contempt For Failure To Pay**

A. **Compensatory Sanctions: Attorneys' Fees**

B. **Compensatory Sanctions: Attorneys' Fees**

  1.  Measurement of Attorney Fees

  2.  Time Spent

  3.  Hourly Rates

C. **PROPOSED CERTIFIED FACTS**

IV. **CONCLUSION**

## I.     INTRODUCTION

The Defendant is in contempt of court – he refuses to pay his court-ordered sanction. In fact, the Defendant has been in violation of this Court's Sanction Order since October 25, 2023 [Dkt. #58]. This Court ordered Defendant to pay to Mr. Salveson $76,084.34 (without treatment for accrued interest) his reasonable attorneys' fees and costs for having to defend against <u>both</u> his frivolous C.C.P. § 425.16 Anti-SLAPP Motion (the "Motion") and Appeal (which was also denied).

The Defendant, a lawyer for fifty (50) years, not only *refuses* to pay the sanction, but he *refuses* to take any steps to comply. And when asked (on four (4) separate occasions, no less) to provide documented verification of his allegedly deplorable financial situation – he refuses that too. Instead of abiding by this Court's Order, the Defendant engaged in show-and-tell – showing nothing which tells Mr. Salveson everything. The Defendant is concealing his money to avoid collection.

A mere example of the Defendant's refusal to abide by this Court's Order and his obligation not only as a litigant, but as an officer of the court:

<u>RFP #15</u>

Provide all DOCUMENTS that support your email communication that You do not have the financial ability to pay the sanction award entered against You in this Action:
<u>Response to RFP #15</u>

OBJECTION. *** on the grounds that it seeks information or documents that are protected from disclosure by the right of privacy.

(Balonick Decl., Ex. "B")

Defendant's disregard of this Court's authority is not only open, but offensive. For a start, the Motion never had the chance to get off the ground. Instead of cutting his losses and taking the high road, the Defendant decided to make matters even worse and filed his baseless Appeal. Forcing Mr. Salveson to defend against this meritless litigation apparently was not enough – the Defendant refused to pay Mr. Salveson's legal fees incurred which led to the Fee Motion – more unnecessary litigation [Dkt. #54].

With his back was to the wall, the Defendant (suspiciously predictable) cried poor and refused to pay – Mr. Salveson gave the Defendant four (4) chances to provide his financials. December 8, 2023, RFP Set One (1) – the Defendant refused to provide any evidence whatsoever of his financial condition; January 6, 2025, RFP Set Two (2) – the Defendant once again refused to provide evidence of his financial inability to pay the sanction; May 28, 2025, Defendant through his counsel only claimed an inability to pay, but refused to provide documentation, and last – May 12, 2025, the Defendant's deposition testimony where he refuses to pay, and refuses to provide any documentation (Balonick Decl., Ex. "A" "B" "C" and "D").

By this Motion, Mr. Salveson respectfully requests that this Court order Defendant to appear in-person for a hearing and show cause why he should not be held in contempt for his failure to pay the Sanctions Order and thereafter adjudicate Defendant in contempt. Furthermore, Mr. Salveson requests that this Court issue coercive and compensatory sanctions against Defendant, including but not limited to ordering Defendant to pay Salveson's reasonable attorneys' fees incurred preparing this Motion and issuing a per diem fine against Defendant for each day he remains out of compliance with this Court's October 25, 2023, Sanctions Order.

## II.    **FACTUAL BACKGROUND**

A. This Court's October 25, 2023, Sanctions Order [Dkt. #25]

On September 30, 2023, Mr. Salveson filed a motion for fees and costs incurred stemming from the Defendant's Anti-SLAPP Motion and Appeal [Dkt. #54]. This Court, before entering the sanction, made the following poignant ruling: "…In determining whether to avoid fees, the Court must determine whether Kessler's anti-SLAPP motion was frivolous. It was…" [Dkt. #58, p. 5, L 3-4)

To avoid Mr. Salveson's collection efforts, the Defendant attempted to settle on November 30, 2023, and at the risk of violating a privileged settlement communication, the Defendant's offer to settle landed somewhere between fantasy and impossibility. While the Defendant was ordered to pay $76,089.34, he

maintained that had no assets and concealed that he not only owned his condominium in Chicago but also owned a lake house in Michigan (Balonick Decl., ¶ 3).

B. Mr. Salveson's Efforts To Determine Defendant's Veracity

In addition to twice requesting that the Defendant provide bank information, financials, or any other documents that would support his claimed financial status, Mr. Salveson (through Counsel) had the following colloquy at the Defendant's May 12, 2025, deposition:

> Q: "…So you're aware of the fact that the Court agreed with Kent and myself and that you were sanctioned $80,000…?"
> A: "…I don't really remember that, but I'm not doubting you…"
> Q: "…okay, so where is the money…?"
> A: "…That – I don't know…"
> A: "…So I have no money…"
> Q: "…You have no money…?"
> A: "…No…"
> Q: "…You're the 181 expert. What do you mean you have no money? What have you been doing all this time…?"
> Q: "…No I'm just being argumentative because it's been two years, and you owe this guy $80,000 before even damages. And you've known about it. Why don't you pay him…?
> A: "…I already answered that. I have no money…"
> Q: "…You're broke…?"
> A: "…Yeah…"
> Q: "…Well, you know sir, we asked you for your financials to support this no-money position you've taken. And you told us that you are going to take a financial right to privacy objection and not give it to us. So you want us to just take your word on the fact that you have no money…?
> Q: "…he's sitting there right now. You owe him that kind of money. And after the article and everything else, he's been dragged through the coals. He had to fight these things that he shouldn't have had to fight. And we asked

you to give us evidence of this not-money aspect, and you say, no, I'm not going to show you…"

Q: "…and when we asked you for bank info, okay, you refused to show us…?

A: "…Yes…"

(Defendant deposition, pp. 162-166)

C. <u>Pre-Filing Meet and Confer Efforts</u>

On May 24, 2025, Mr. Salveson's Counsel made a final demand on the Defendant to pay the Sanction Order and also offered two separate dates to meet and confer (Balonick Decl., Ex. "C").

Defendant, once again through his counsel, asserted that he had no money and therefore was not in contempt (Balonick Decl., Ex. "C"). A meet-and-confer then took place on May 29, 2025, where Mr. Balonick, Mr. Berkson, and Mr. Halwani (counsel for Defendant) discussed their respective positions (Balonick Decl., ¶ 4). Defendant's counsel maintained that the instant Motion was nothing more than a veiled discovery motion, but Plaintiff's Counsel immediately corrected that position and stated "…No, we just want to get paid…" and also stated that "…an order to pay a sanction is a judgment, and as a judgment debtor, the Defendant lost his financial right to privacy…" (Balonick Decl., ¶ 5). Plaintiff's Counsel also stated that the Defendant, upon filing his opposition, would have to provide this Court with financials regardless (Balonick Decl., ¶ 6). Unfortunately, the Defendant simply refused to pay, and once again refused to provide any documents to support his financial position (Balonick Decl., ¶ 7).

As of the filing of this Motion, the Defendant refuses to provide any documents related to his inability to pay the Sanction Order and has not paid any amount toward it (Balonick Decl., ¶ 8).

## III.    ARGUMENT

### Civil Contempt

It is well-established that "courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). In *Chambers v. NASCO, Inc.*, 510 U.S. 32, 43 (1991), the Supreme Court held that federal district courts possess that inherent power. In addition, district courts have the power to punish disobedience to court orders by criminal contempt pursuant to 18 U.S.C. § 401(3).

318 U.S.C. § 401(3).

Civil contempt is designed to induce compliance with a court order; punishment therefore is conditioned upon the contemnor's continuing noncompliance and is limited to imprisonment until the contemnor complies with the order or until the trial ends. *See United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980). In contrast, criminal contempt requires willful disobedience of a clear and definite court order. *See id*. Punishment for criminal contempt "serves to vindicate the authority of the court and does not terminate upon compliance with the court's order." *Id.* Nevertheless, the same conduct may result in both civil and

PLAINTIFF'S MOTION FOR OSC RE: CONTEMPT

criminal contempt charges. *See id.*

An order holding a party in contempt is appropriate "[i]f a person disobeys a specific and definite court order" by failing to "take all reasonable steps within his power to insure compliance with the court's order." *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) (citing *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983)) (quotation marks and brackets omitted). In the Ninth Circuit, a party alleging that another person should be held in civil contempt must establish by clear and convincing evidence that the alleged contemnor "violated the court order," "beyond substantial compliance," "not based on a good faith and reasonable interpretation of the order." *Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th Cir. 2009) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).

It is well-established that a party petitioning for an adjudication that another party is in civil contempt does not have the burden of showing that the other party has the capacity to comply with the court's order. *See NLRB v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973).

In the context of civil contempt, "[i]t does not matter what the intent of the [party] was when [it] violated the court's order." *In re Crystal Palace Gambling Hall, Inc.* 817 F.2d at 1365 (citing *McComb v. Jacksonville Paper Co.*, 336 U.S.

187, 191 (1949); *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983), *cert. denied*, 464 U.S. 1040 (1984)). Because the purpose of civil contempt is remedial, willfulness is not a necessary element for civil contempt. *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985) (citing, among others, *McComb* 336 U.S. at 191). Still, the Supreme Court has held that "civil contempt sanctions may be warranted when a party acts in bad faith." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) (citing *Chambers*, 501 U.S. at 50). In this regard, "a party's 'record of continuing and persistent violations' and 'persistent contumacy' justifie[s] placing 'the burden of any uncertainty in the decree . . . on [the] shoulders' of the party who violated the order." *Taggart*, 139 S. Ct. at 1802 (quoting *McComb*, 336 U.S. at 192–93).

Once that *prima facie* showing of civil contempt is made, the burden shifts to the alleged contemnor to "produce evidence explaining his noncompliance." *United States v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999) (citations and quotation marks omitted). And while the inability to comply with a court order may be a defense to contempt, the party asserting that defense must show "categorically and in detail" why compliance is impossible. *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1240–41 (9th Cir. 1999) (quoting *Trans Ocean Export Packing, Inc.*, 473 F.2d at 616); *see also United States v. Rylander*, 656 F.2d 1313, 1318 (9th Cir. 1981), *rev'd on other grounds*, 460 U.S. 752 (1983) ("It is settled, however, that in raising this defense, the defendant has a burden of production."). In making a

PLAINTIFF'S MOTION FOR OSC RE: CONTEMPT

contempt determination, a court may consider "the [party's] history of noncompliance" and "the failure to comply despite the pendency of the contempt motion." *Stone v. City of San Francisco*, 968 F.2d 850, 857 (9th Cir. 1992), *cert. denied*, 506 U.S. 1081 (1993).

The Ninth Circuit has held "that finding a party in civil contempt without a full-blown evidentiary hearing does not deny due process of law to a contemnor." *Ayres*, 166 F.3d at 995 (citations omitted). Nevertheless, contempt sanctions ordinarily should not be imposed "solely on the basis of affidavits." *Id.* (quoting *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1324 (9th Cir. 1996), *cert. denied*, 525 U.S. 983 (1998)). Still, where the contemnor "[does] not present any arguments which create[] any material issue of fact, due process [does] not require an evidentiary hearing prior to a finding of contempt." *Ayres*, 166 F.3d at 996 (citations and quotation marks omitted).

## **Defendant Should Be Adjudicated In Contempt For Failure To Pay**

To date, while the Defendant knows that he owes Mr. Salveson the full amount of the Sanction Order, he refuses to pay any amount while claiming that he has no ability to pay (Balonick Decl., ¶ 8). Concurrently, the Defendant also refuses to provide evidence to support his noncompliance (Balonick Decl., ¶ 8, Ex. "B"). Notably, the Defendant's claim that he has no assets is false:

"…I don't own it [Condo and Lake House] and haven't owned it. It's called tenancy by the entirety…" (Defendant Deposition, p. 178, L 12-23).

Mr. Salveson was forced to pay legal fees to oppose both a meritless Anti-SLAPP Motion and Appeal, and when the Defendant refused to reimburse him for his legal fees, he had to file an additional motion (Balonick Decl., ¶ 9). The Defendant refuses to submit an affidavit of his assets and liabilities, he refuses to borrow against his real estate, he refuses to take out a loan, he and his wife continue to pay their bills, legal fees, litigation costs, expert fees, and the Defendant while claiming he is 'retired' still solicits business (Balonick Decl., ¶ 10).

BY THINE OWN HAND

The Defendant is not insolvent, he is contemptuous. The Defendant knew that the Anti-SLAPP law did not protect an attorney's breach of his fiduciary duty, but he filed it because he never had a dog in the fight –his legal fees paid with his insurance carrier's money. When the Motion failed because it was meritless, he refused to reimburse Mr. Salveson's attorney fees. Still on his insurance carrier's dime, he filed his baseless Appeal. When that was denied, the Defendant still refused to reimburse Mr. Salveson, which forced the filing of the Fee Motion (Balonick Decl., ¶ 11).

PLAINTIFF'S MOTION FOR OSC RE: CONTEMPT

Adopting the 'too bad, so sad Mr. Salveson' approach – the Defendant refuses to abide by this Court's Order and now mysteriously has no money even though he is on his second set of attorneys, has engaged in motion practice, answers and propounds written discovery, conducts and presents depositions, and is now engaged in medical and legal expert discovery (Balonick Decl., ¶ 12).

### D. <u>Compensatory Sanctions: Attorneys' Fees</u>

A court may award the moving party's attorneys' fees in obtaining the contempt finding as a form of compensatory contempt sanctions. *See, e.g., AECOM Energy & Constr., Inc. v. Ripley*, 2018 U.S. Dist. LEXIS 79412, at *12, 14 (C.D. Cal. 2018) [noting that "the Court can use its contempt power to enforce its prior award of attorneys' fees" and awarding the attorneys' fees incurred in obtaining the contempt finding] (citation omitted). Whether to award fees and expenses as a remedial measure in a contempt action is left to the discretion of the district court. Perry, 759 F.2d at 705–06. For this analysis, the Ninth Circuit has made clear that "the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party ..." *Donovan v. Burlington N.,* 781 F.2d 680, 684 (9th Cir. 1986) (quoting Perry, 759 F.2d at 705).

Therefore, Mr. Salveson requests an order from this Court requiring the Defendant to pay $9,100.00 in reasonable attorneys' fees incurred in preparing this Motion, as a compensatory sanction.

1. Measurement of Attorney Fees

A party seeking an award of attorney fees "must submit evidence to support the number of hours worked and the rates claimed." *Global Ampersand, LLC v. Crown Eng'g & Constr.*, 261 F.R.D. 495, 502 (E.D. Cal. 2009) (citing *Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045* (9th Cir. 2000)). The Ninth Circuit has adopted the "lodestar" approach for assessing the award of attorneys' fees, under which "[t]he 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)).

The lodestar is considered "the basic fee for comparable services in the community" (*id.*), and under California law, may be adjusted by the court based on several factors. *Ketchum v. Moses,* 24 Cal.4th 1122, 1132 (2001). These factors include "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." Ibid; *Dixon v. City of Oakland,* 2014 WL 6951260, at *3 (N.D. Cal. 2014).

2. Time Spent

In order to prepare for this Motion, Plaintiff's Counsel (Balonick) spent 17.00 hours of legal work, as set forth in the Balonick and Berkson Declarations. These hours were reasonable and necessary and consisted of reviewing other contempt motions and orders filed in this District, strategy discussions with Mr. Salveson and Co-Counsel Mr. Berkson, researching law and then drafting.

E.  Hourly Rates

Balonick hourly rates of $700 per hour are reasonable, as is Mr. Berkson's $900/hour rate. Mr. Berkson has been a 40-year premier criminal defense attorney whose clients run the gamut from politicians, organized crime-figures, narcotics, and white-collar criminal defense with bench and jury trials of at least 200 (Berkson Decl., ¶2). Based on a recent article from Azahri LLC, rates can range from $1,000 per hour up to $50,000 for a retainer. Mr. Berkson's declaration and communications with Co-Counsel was calculated to be 4 hours ($3,600.00 total) (Berkson Decl., ¶3).

Balonick began his career as a Cook County State's Attorney – starting in the misdemeanor division and then trying cases ranging from arson, narcotics and murder (Balonick Decl., ¶ 13). Subsequently, Balonick was an associate at a premier medical malpractice firm that focused its practice in neo-natal brain damage (Balonick Decl., ¶ 14). From there, Balonick passed the New York Bar and then the California Bar and moved to Los Angeles, changing the focus of

practice to business litigation with a focus on asset protection for other lawyers (Balonick Decl., ¶ 15). Balonick has tried more than 460 cases to verdict (Balonick Decl., ¶ 16).

## F. **PROPOSED CERTIFIED FACTS**

Based on the foregoing, Plaintiff Kent Salveson respectfully requests that Magistrate Judge Spaeth certify the following facts to District Judge Wright:

1. On February 26, 2022, Plaintiff filed his operative Complaint in the Central District of California [ECF Dkt. # 1]

2. On October 25, 2023, in connection with Plaintiff's Fee Motion, the Court ordered the Defendant to pay sanctions in the amount of $76,089.34

3. Plaintiffs' Counsel and Defendant's counsel met and conferred on May 29, 2025, where Plaintiff made a demand for payment and Defendant through his counsel maintained that the Defendant is not in contempt because he lacks the ability to pay the sanction

4. As of the date of the filing of this Motion, Defendant has not paid any amount toward the sanction.

## IV. **CONCLUSION**

PLAINTIFF'S MOTION FOR OSC RE: CONTEMPT

For the foregoing reasons, Plaintiff Kent Salveson respectfully requests that this Court hold Defendant in contempt of court and order compensatory and coercive sanctions against Defendant Hal Ross Kessler as set forth in this Motion.

Dated: June 18, 2025                    BALONICK LAW OFFICE, INC.

                                        By: /s/ Barney Balonick, Esq.

                                        DENNIS BERKSON & ASSOC., LTD.
                                        By: /s/ Dennis Berkson, Esq.

                                        Attorneys for Plaintiff
                                        Kent Salveson

CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2025, the Plaintiff's Motion for OSC Re: Contempt was served by electronic mail to all counsel through the Court's PACER as follows:

Matthew Cave
Kibler Fowler & Cave LLP
11100 Santa Monica Blvd
#500
Los Angeles, CA 90025
mcave@kfc.com